**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROSEMARY CHESTERS et al.,** | * | |
| Plaintiffs, | * | |
| v. | * | Case No. 06cv00933 RWT |
| **ALISON WELLES-SNOWDEN et al.,** | * | |
| Defendants. | * | |

******

## MEMORANDUM OPINION

This is an action that was brought in state court, under state law, for $47,390 in money damages. The plaintiffs, all citizens and residents of the United Kingdom, paid the money to a mental health clinic that was treating their relative Martin Snowden; they seek to recover it from either Martin's estranged wife, Defendant Alison Welles-Snowden, or from the two health insurance companies that insured Martin under Alison's health plan.

Defendants removed this case from the Circuit Court for Montgomery County, Maryland, on the grounds that the Employee Retirement Income Security Act ("ERISA") completely preempted the plaintiffs' state-law claims, and that—notwithstanding the face of the complaint—the complaint therefore presented a federal question that gave this Court jurisdiction.

For the reasons below, this Court concludes, *sua sponte*, that ERISA does not completely preempt the state-law claims. Accordingly, this Court lacks subject matter jurisdiction, and the case will be remanded to the Circuit Court for Montgomery County, Maryland, by separate order.

**BACKGROUND**

Since May 2005, Martin Snowden (Plaintiff Chesters' brother and Plaintiffs Alan and Kathleen Snowden's son) has been in divorce proceedings with Defendant Welles-Snowden. Martin has remained insured under Alison's health insurance policy with Defendant United Healthcare Insurance Company ("United") since his separation from Alison in December 2003. On or about December 25, 2004, Martin visited Ms. Chesters and the Snowdens in England. Upon his arrival, both Ms. Chesters and the Snowdens discovered that Martin was suffering from severe depression and admitted him to The Priory, a mental health care facility in England. Before Martin was admitted to The Priory, Ms. Chesters contacted United on Martin's behalf to arrange for payment for Martin's pending hospitalization. United allegedly directed Ms. Chesters to contact Defendant CIGNA Behavioral Health, Inc. ("CIGNA"), United's mental health care subcontractor.

After learning that CIGNA would not cover Martin's hospitalization in England, Ms. Chesters again contacted United. United informed her that it would cover payment for Martin's care, the cost of which would be "around $47,000," on an "out-of-network" basis. However, United required that Ms. Chesters first pay The Priory and, at a later date, request reimbursement from United. Chesters expressed concern to United that, due to the pending divorce, she would not receive the reimbursement if it were sent to Alison, the plan participant. United allegedly explained that, if Ms. Chesters wanted to receive the reimbursement directly, she would need to have Ms. Welles-Snowden authorize such an arrangement. Alan Snowden, Martin's father, was able to persuade Ms. Welles-Snowden to agree to the arrangement. Ms. Welles-Snowden subsequently signed a letter authorizing United to send the reimbursement directly to Chesters ("the Authorization").

United later informed Martin that CIGNA was processing his claim for reimbursement. CIGNA later told him that it would not honor the Authorization, would only deal with Ms. Welles-Snowden as the plan participant, and had already issued the reimbursement to Ms. Welles-Snowden.

Ms. Welles-Snowden refused to relinquish the reimbursement to Ms. Chesters, claiming that it was marital property and relevant to the pending divorce proceedings.

Plaintiffs Rosemary Chesters, Alan Snowden, and Kathleen Snowden then brought this action in the Circuit Court for Montgomery County, Maryland. They allege, *inter alia*, that Defendants CIGNA and United negligently failed to reimburse them, and that United negligently misrepresented to them that, in order to obtain reimbursement for their son's mental health care directly (in lieu of the benefits being paid to Welles-Snowden), they simply needed to have Welles-Snowden contact United in order to authorize the arrangement. The Plaintiffs seek compensatory damages from CIGNA and United jointly and severally in the amount of $47,390, with interests and costs. Before the Court now are motions by CIGNA and United to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment. The Court does not reach these motions, however, because it concludes that it lacks subject matter jurisdiction.

## DISCUSSION

Every federal court has an obligation to determine whether it has subject matter jurisdiction over a case. *See, e.g.*, *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 402 (1884) ("[T]he rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction . . . in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act."). For this reason, 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," without requiring a motion or imposing a time limit on such action. Thus, the first question before this Court—and, ultimately, the only question, because of that question's answer—is whether this Court has jurisdiction. It does not.

An action initiated in state court may be removed to federal court "'only if it might have been brought in [federal court] originally.'" *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d

366, 370 (4th Cir. 2003) (citing *Darcangelo v. Verizon Commc'n, Inc.*, 292 F.3d 181, 186 (4th Cir. 2002)). Federal district courts possess original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, courts "look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Darcangelo*, 292 F.3d at 186 (citing *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996)).

ERISA preemption creates an exception to this "well-pleaded complaint" rule. Where federal law gives rise to *complete* preemption of a plaintiff's state-law claims, those claims are automatically converted into federal claims and are considered to appear on the face of the complaint; in such cases, the case may be removed to federal court. *Id.* at 187 (quoting *Taylor*, 481 U.S. at 63–64). Not every instance of ERISA preemption gives rise to removal jurisdiction, however; if there is merely *conflict* (also known as ordinary) preemption, a defendant may raise preemption as a defense to a plaintiff's state law claims in state court, but the state-law claims are not converted to federal claims that give rise to federal question jurisdiction. *Sonoco*, 338 F.3d at 371.

Thus, in the ERISA context, "[t]he only state law claims properly removable to federal court are those that are completely preempted by ERISA's civil enforcement provision, § 502(a) [29 U.S.C. § 1132(a)(3)]." *Id.* at 371 (internal quotation marks omitted). There are three essential requirements for complete preemption: "(1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must fall within the scope of an ERISA provision that it can enforce via § 502(a); and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan." *Id.* at 372 (internal quotation marks and alterations omitted).

Section 502(a)(1)(B) is the part of § 502(a) that, according to CIGNA and United, applies to Chesters' and the Snowdens' negligence and negligent misrepresentation claims. The only parties

4

that are entitled to pursue an ERISA claim under § 502(a)(1) are "participant[s]" in or "beneficiar[ies]" of an ERISA plan. 29 U.S.C. § 1132(a)(1). The Supreme Court has narrowly construed Section 502 to permit only the parties enumerated therein to sue directly for relief under ERISA. *See Franchise Tax Bd. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983). A participant in an ERISA plan is "any employee who is or may be eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A beneficiary of an ERISA plan is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8).

CIGNA and United both concede that the Snowdens are neither participants in nor beneficiaries of an ERISA plan; consequently, they lack standing. *See* Mem. in Support of CIGNA's Mot. to Dismiss, Paper No. 19, at 12–13; Mem. in Support of United's Mot. to Dismiss, Paper No. 23, at 2. As such, this Court does not possess subject matter jurisdiction on the basis of the Snowdens' claims, as they are not completely preempted by ERISA. However, assuming *arguendo* that there was a valid assignment of the benefits to Ms. Chesters by Ms. Welles-Snowden, CIGNA and United suggest that Ms. Chesters may have standing under ERISA as the assignee of a participant in an ERISA plan.[1]

This argument by CIGNA and United fails, however. Although various courts have held that assignees of participants and beneficiaries may have derivative standing under ERISA, they have only done so in cases involving health care providers to whom a participant or beneficiary assigned their claims under an ERISA plan in exchange for health care.[2] *See Simon v. Value Behavioral*

---

[1] Despite their assertion that this Court has removal jurisdiction, CIGNA and United also argue that there was no valid assignment of benefits by Alison to Chesters. If this argument is correct, then, independently of the reasons explained below, Chesters would not have standing under ERISA because she cannot claim any legal entitlement to the benefits.

[2] Looking solely at the plain text of 29 U.S.C. § 1002(8), the definition of "beneficiary"—"a person designated by a participant, or by the terms of an employee benefit

*Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000); *see also Gen. Elec. Co.*, 263 F.3d at 178. These circuits have held that this exception to the typical standing requirements under ERISA was intended to be narrow. *Gen. Elec. Co.*, 263 F.3d at 178 (citing *Value Behavorial Health, Inc.*, 208 F.3d at 1081). Because Ms. Chesters is not health care provider to whom Ms. Welles-Snowden assigned her claims under a plan in exchange for health care, she lacks derivative standing to sue under ERISA. As such, Ms. Chesters' claims for negligence and negligent misrepresentation are not completely preempted by ERISA, and this Court lacks subject matter jurisdiction over this case.[3]

## CONCLUSION

For the foregoing reasons, this Court holds that it lacks subject matter jurisdiction over Plaintiffs' claims. Accordingly, by separate order, the Court will will remand the case to the Circuit Court for Montgomery County.

|     8/3/06     | /s/ |
| :---: | :---: |
| DATE | ROGER W. TITUS |
|  | UNITED STATES DISTRICT JUDGE |

---

plan, who is or may become entitled to a benefit thereunder"—might be construed to encompass assignees of a participant. However, this is not how assignees of participants have been treated under the case law. At least two circuits have treated participants in and beneficiaries of an ERISA plan interchangeably for the purposes of deciding whether an assignee has derivative standing to sue under ERISA. *See Misic v. Bldg. Serv. Employee Health & Welfare Trust*, 789 F.2d 1374, 1378–79 (9th Cir. 1986) (per curiam) (referring to "employees" who were covered by an ERISA plan as "beneficiaries"); *Simon v. Gen. Elec. Co.*, 263 F.3d 176 (2d Cir. 2001) (per curiam) (affirming a district court decision in which an assignee was held to lack standing despite the fact that it was unclear whether the original assignor was a beneficiary of or a participant in the plan). The reason for this is that to treat all assignees of participants as beneficiaries "would be tantamount to transforming health benefit claims into a freely tradable commodity," *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000); in the case of health plans, beneficiaries are not those who might have a derivative monetary claim to reimbursement for health services, but those who are entitled to health services themselves.

[3] This holding is not meant to suggest that CIGNA and United cannot raise ERISA *conflict* preemption as a defense in the Circuit Court for Montgomery County. Similarly, this Court declines to decide whether there was a valid assignment of benefits by Ms. Welles-Snowden to Ms. Chesters.